## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEW JERSEY MANUFACTURERS INSURANCE GROUP A/S/O ANGELA SIGISMONDI, | : : : : | **Civil Action No. 16-cv-9014 (JXN) (MAH)** |
| Plaintiff, | : | |
| v. | : : | **OPINION** |
| AMAZON.COM INC., ABC CORPORATION 1 - 10, and JOHN DOES 1 – 10 | : : : | |
| Defendants. | : | |

**NEALS**, District Judge:

Before the Court is Defendant Amazon.com, Inc.'s ("Amazon") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 59. Plaintiff New Jersey Manufacturers Insurance Group ("NJM") filed opposition, ECF. No. 64, to which Amazon responded by way of reply, ECF. No. 67.  NJM, as subrogee of Angela Sigismondi, asserts claims for strict liability under the New Jersey Products Liability Act ("NJPLA" or "PLA"), breach of warranty and negligence.  Amazon moves for summary judgment on NJM's product-liability claims, asserting that it is not a "manufacturer" or "product seller" of the hoverboard under the NJPLA, and on NJM's breach of warranty and negligence claims on the basis that the NJPLA subsumes such claims.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332.  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated herein, Amazon's motion is **GRANTED in part and DENIED in part**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The dispute stems from an allegedly defective hoverboard, purchased on Amazon.com, which caused a fire at the home of NJM's insured.  NJM is an insurance company doing business in the State of New Jersey with a principal business address at 301 Sullivan Way, West Trenton, New Jersey.  Am. Compl. at ¶ 2, ECF No. 15.  NJM is the homeowner's insurance carrier for Ms. Sigismondi's property, located in Wayne, New Jersey (ECF No. 64-2 at 7 ¶ 40) (Slattery Cert., Ex. 5 Sigismondi dep, at 5:18-25), where she resides with her three children.  *Id.* at ¶ 41 (Slattery Cert., Ex. 5 Sigismondi dep, at 6:1-7).  Angelo Gencarelli is Ms. Sigismondi's ex-husband and father to their three children.  *Id.* at ¶ 43 (Slattery Cert., Ex. 6, 6:21-23, 7:18).  Amazon maintains a principal corporate headquarters business address at 1200 12th Avenue South, Suite 1200, Seattle, Washington. ECF No. 15 ¶ 3.  Amazon allows third parties to advertise and sell consumer products on its website.  DRSOF at 2 ¶ 2.[1]  In January 2015, Paradise 00 became a third-party seller on Amazon.com.  PSSOF at ¶ 30; DRSOF.  Paradise 00 is a Chinese company located in Shenzhen, Guangdong 518000.  *Id.* at ¶¶ 32, 34.[2]  Sometime in 2015, Giancarelli and his children were searching Amazon.com for hoverboards.  *Id.* at ¶ 44.  In November 2015, Giancarelli purchased two Paradise 00 hoverboards through Amazon.com.  DSOF at 2 ¶ 2.[3]  NJM claims that one of the hoverboards caught fire and damaged Ms. Sigismondi's home.  PSSOF at 10 ¶ 64.

---

[1] The Court will use "Amazon.com" or "the Amazon Marketplace" to refer to Amazon's website.

[2] Paradise 00 is a fictitious name for Shenzhen Megmeet Ecommerce Co., Ltd., is the third-party vendor's legal name. Shenzhen Megmeet had an address of Room 32, Block H, Huafeng Keji Yuan, Yun An Road, Baoan 12 Area, Shenzhen, Guangdong 518000.  *See* ECF No. 67-1 at ¶¶ 32, 33 (citing ECF No. 64-3 (Slattery Cert., Ex. 2, at 19:12-25; *see also* Slattery Cert. Ex. 4, Answer to Interrogatory No. 4)).

[3] For ease of reference, the Court will abbreviate the following documents:

As a third-party seller, Paradise 00 was required to enter into the Amazon Services Business Solutions Agreement ("BSA" or "the BSA"). *Id.* at ¶ 2. Amazon had complete control over the terms and conditions of the BSA, and Paradise 00 could not negotiate any of the BSA's terms or conditions. *Id.* at ¶ 31. Under the BSA terms, third-party sellers were required to "provide in the format [Amazon] require[s] accurate and complete required product information for each product or service offer[ed] through any Amazon site." *Id.* at ¶ 5. The BSA gives Amazon "the right in [its] sole discretion to determine the content, appearance, design, functionality and all other aspects of the Amazon sites, including by redesigning, modifying, removing or restricting access to any of them, and by suspending, prohibiting or removing any listing." *Id.* at ¶ 6. The BSA also requires third-party sellers to indemnify Amazon for any claims or losses arising out of the sales of their products. *Id.* at ¶ 7. Amazon sought indemnification from Paradise 00, but Paradise 00 had not provided indemnity. *Id.* at ¶ 36. "The BSA also requires third-party sellers to maintain liability insurance with a limit of $1MM [sic] naming Amazon as an insured upon reaching the 'insurance threshold,' which means that the seller sells over $10,000 worth of merchandise for three

---

- Amazon.com Inc.'s Local Rule 56.1 Statement of Material Facts Not in Dispute, ECF No. 59-1 ("DSOF").
- Plaintiff's Local Rule 56.1 Response to Defendant's Statement of Material Facts Not in Dispute, ECF No. 64-1 ("PRSOF").
- Plaintiff's Local Rule 56.1 Supplemental Statement of Material Facts Not in Dispute, ECF No. 64-2 ("PSSOF").
- Amazon.com Inc.'s Local Rule 56.1 Responsive Statement of Material Facts Not in Dispute, ECF No. 67-1 ("DRSOF").
- Amazon.com, Inc.'s Brief in Support of its Motion for Summary Judgment, ECF No. 59-2 ("Def.'s Br.").
- Plaintiff's Opposition to Amazon's Motion for Summary Judgment, ECF No. 64 ("Pl.'s Opp'n").
- Amazon.com, Inc.'s Reply in Support of its Motion for Summary Judgment, ECF No. 67 ("Def.'s Reply Br.").

consecutive months." *Id.* at ¶ 8.  Amazon, however, does not require third party sellers to produce a certificate of insurance unless Amazon requests one.  *Id.* at ¶ 10.

With respect to third-party sales on the Amazon Marketplace, Amazon customers cannot make direct payment to third-party sellers.  *Id.* at ¶ 22.  Amazon processes the purchaser's payment and sets aside the sales proceeds in the seller's account, after taking fees that are due to Amazon. *Id.*  The BSA outlines the various "Referral Fees," "Variable Closing Fees," and the non-refundable "Selling on Amazon Subscription Fee" that Amazon charges.  *Id.* at ¶ 16.  The referral fee Amazon obtained on the category of products such as hoverboards was 15%.  *Id.* at ¶ 17.

In addition to processing payments, Amazon also processes all refunds between third-party sellers and purchasers and guarantees products purchased on its website, including the hoverboards that Mr. Giancarelli purchased, through its "A-to-z Guarantee."  *Id.* at ¶¶ 24, 27.  The A-to-z Guarantee states:

> The Amazon A-to-z Guarantee *protects* you when you purchase items sold and fulfilled by a third-party seller. *Our guarantee covers both the timely delivery and the condition of your items.* If either are unsatisfactory, report the problem and our team determines whether you are eligible for a refund.

*Id*. (emphasis added).  The A-to-z Guarantee allows customers to obtain a refund from Amazon if the customer is not satisfied with or did not receive an item sold by a third-party vendor.  *Id.* at ¶ 28.

From November 10, 2015 to December 10, 2015, Amazon customers purchased 244,430 hoverboards through Amazon.com.  PSSOF at ¶ 52, DRSOF.  These hoverboards were sold by Amazon and various third-party sellers.  *Id.*  In April 2015, Amazon received a report that hoverboards were catching fire, sparking, or exploding.  PSSOF at ¶¶ 54, 57; DRSOF.  As of December 10, 2015, Amazon had received seventeen customer complaints in the United States concerning fire and explosion risks posed by hoverboards.  PSSOF at ¶ 56.  Amazon began

removal of all hoverboard listings from Amazon.com on December 10, 2015. *Id.* at ¶ 67. This removal process took approximately two to three days to complete. *Id.* at ¶ 68. On December 12, 2015, Amazon sent an email to hoverboard purchasers with the subject "Attention: Important Product Safety Notification Regarding Your Amazon.com Order." *Id.* at ¶ 60. Amazon also sent customers a message regarding new reports of safety issues with hoverboards. *Id.* at ¶ 69.

Amazon was notified of the fire at Ms. Sigismondi's residence by way of an April 29, 2016 letter sent via overnight delivery. (Slattery Cert., Ex. 11, Notice of Loss letter to Amazon); PSSOF at ¶ 64; DRSOF. On December 5, 2016, NJM initiated this action against Amazon and other entities and individuals whose identities are unknown. Compl., ECF No. 1.

On October 4, 2017, NJM amended its Complaint, asserting three causes of action: Count 1 – strict products liability; Count 2 – breach of warranty; and Count 3 – negligence. Am. Compl. at ¶¶ 15-36, ECF No. 15. On December 18, 2020, Amazon filed its motion for summary judgment. ECF No. 59. On January 19, 2021, NJM filed its opposition. ECF No. 64. On February 8, 2021, Amazon filed a reply brief. ECF No. 64.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not

preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322.  If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366.  Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001); *see Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.").  Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 45 (3d Cir. 2017) ("There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party.").  Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks v. Kyler*, 204 F.3d 102, 105 n. 5 (3d Cir. 2000).

### III.     DISCUSSION

The critical issue before the Court is whether Amazon qualifies as a "product seller" as that term is defined under the NJPLA.  To answer this question, this Court, sitting in diversity, must predict how the New Jersey Supreme Court would resolve the issue.  *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011); *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, Civ. No. 17-2738 (FLW)(LHG), 2018 WL 3546197, at *5 (D.N.J. July 24, 2018).  To do so, the Court considers (1) the principles of statutory interpretation that the New Jersey Supreme Court would apply; "[(2)] what [the New Jersey Supreme Court] has said in related areas; [(3)] the decisional law of the state intermediate courts; [(4)] federal cases interpreting state law; and [(5)] decisions from other jurisdictions that have discussed the issue." *Id.*  (citing *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 675 (3d Cir. 2002)).

In New Jersey, "[t]he Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." *DiProspero v. Penn*, 183 N.J. 477, 492 (2005).  New Jersey courts ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions to give sense to the legislation as a whole.  *Id.*  (internal citations omitted).  It is not the function of the Court to "rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language." *O'Connell v. State*, 171 N.J. 484, 488 (2002).  "The preeminent canon of statutory interpretation requires [courts] to presume that the legislature says in a statute what it means and means in a statute what it says there." *Dressler v. Lime Energy*, Civ. No. 3:14-07060 (FLW)(DEA), 2015 WL 4773326, at *8 (D.N.J. Aug. 13, 2015) (quoting *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004)).  Moreover, Courts cannot "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment,"

*Craster v. Bd. of Comm'rs of Newark*, 9 N.J. 225, 230 (1952), or "engage in conjecture or surmise which will circumvent the plain meaning of the act [….]" *In re Closing of Jamesburg High School,* 83 N.J. 540, 548 (1980).  The Court's "duty is to construe and apply the statute as enacted."  *Ibid.* In determining the meaning of a statute, the New Jersey Supreme Court directs courts to "consider first the plain language of the statute."  *DiProspero*, 183 N.J. at 493; *Dressler*, 2015 WL 4773326, at *8.   "If the language is clear, we interpret the statute consistent with its plain meaning." *Oberhand v. Dir., Div. of Taxation*, 193 N.J. 558, 568 (2008) (citing *GE Solid State, Inc. v. Dir., Div. of Taxation*, 132 N.J. 298, 306 (1993)); *Michael J. Wright Const. Co. v. Kara Homes, Inc.*, 396 B.R. 131, 135 (D.N.J. 2008) ("If the meaning of the statute is unambiguous, then courts need not dig deeper.").   "If the language is not clear, we look to the legislative history to aid in determining the legislative intent of the statute."  *Oberhand*, 193 N.J. at 568.

The Court begins its analysis with the plain language of the NJPLA.  *DiProspero*, 183 N.J. at 492.  The language of the NJPLA limits liability to manufacturers and sellers, and states, in pertinent part:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable[,] or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C−2.  In N.J.S.A. § 2A:58C-8, a related section under the same products liability chapter, the terms "manufacturer" and "product seller" are defined.  There, a "product seller" is defined as follows:

> any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or *otherwise is*

*involved in placing a product in the line of commerce*. The term "product seller" does not include:

1. A seller of real property; or
2. A provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services; or
3. Any person who acts in only a financial capacity with respect to the sale of a product.

N.J.S.A. § 2A:58C-8 (emphasis added).

**A.  Whether Amazon is a "Product Seller" under the NJPLA**

State and federal courts in New Jersey have consistently recognized that "[w]hen the Legislature defines a term, [the Court is] bound by the plain language of that definition." *John Gaviria v. Lincoln Educ. Services Corp.*, Civ. No. 20-18552 (KM) (JBC), 2021 WL 2886086, at *3 (D.N.J. July 8, 2021); *see also Seven Plus One, LLC v. Sellers*, No. A-4688-14T2, 2016 WL 6994346, at *6 (N.J. Super. Ct. App. Div. Nov. 29, 2016) ("When construing a statute in which the Legislature has clearly defined a term, the courts are bound by that definition.") (internal quotation omitted).  The New Jersey Legislature used precise language within the NJPLA to define a "product seller."  The NJPLA specifically outlines those activities that the term "product seller" encompasses and added the broader language "or otherwise is involved in placing a product in the line of commerce."  N.J.S.A. § 2A:58C-8.

Notwithstanding the above, Amazon urges the Court to go beyond the statutory definition and consider the dictionary definitions of the word "seller" for support in interpreting the statute. *See* Def.'s Br. at 12-13.  Amazon contends that the Court should construe "seller" as a person who transfers "a thing that one owns to another in exchange for something of value, usually money." Def.'s Br. at 12.  The Court has neither the need nor the right to resort to the dictionary definition of "seller" for claims raised under the NJPLA, because the Legislature has clearly defined the term. *See* N.J.S.A. § 2A:58C-8.  The Legislature did not include Amazon's proposed language as an

added condition to be considered a "product seller."  As a result, this Court "will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit." *Tumpson v. Farina*, 218 N.J. 450, 467 (2014); *Craster*, 9 N.J. at 230.

The language of N.J.S.A. § 2A:58C-8 is consistent with the principles of New Jersey strict products liability law, which hold that a consumer injured by a defective product may bring a strict liability action against any business entity in the chain of distribution.  *See, e.g., Mettinger v. Globe Slicing Mach. Co.*, 153 N.J. 371, 380 (1998); *Michalko v. Cooke Color & Chem. Co.*, 91 N.J. 386, 394 (1982); *American White Cross Laboratories, Inc. v. Continental Ins.* Co., 202 N.J. Super. 372, 379 (App. Div.1985); *Santiago v. E.W. Bliss Div.*, 201 N.J. Super. 205, 223 (App. Div. 1985).  In that regard, although a distributor and a retailer may be innocent conduits in the sale of the defective product, they remain liable to the injured party.  *American White Cross*, 202 N.J. Super. at 379; *Santiago*, 201 N.J. Super. at 223.  Thus, an entity can be within the chain of distribution even without taking possession of the product.  *Promaulayko v. Johns Manville Sales Corp.*, 116 N.J. 505, 510−11 (1989).

This language is also consistent with the New Jersey Legislature's 1995 amendment to include an immunity provision in the NJPLA "to rescue persons it categorized as 'product sellers' from strict liability in certain circumstances." *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530 (D.N.J. 1999).  Accordingly, categorization as a "product seller" does not in and of itself equate to liability.  The amended section provides, in relevant part, that

> a. In any product liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage.
> b. Upon filing the affidavit pursuant to subsection a. of this section, the product seller shall be relieved of all strict liability claims, subject to the provisions set forth in subsection d. of this section….

N.J.S.A. § 2A:58C-9(a), (b).  Put another way, a product seller can escape liability under the NJPLA "by filing an affidavit correctly identifying the manufacturer of the product."  *Claypotch*, 360 N.J. Super. at 483 (citing N.J.S.A. 2A:58C-9(b)).  The NJPLA outlines the circumstances under which a product seller is *subject* to strict liability and provides that,

> c. The product seller shall be subject to strict liability if:
> (1) The identity of the manufacturer given to the plaintiff by the product seller was incorrect. Once the correct identity of the manufacturer has been provided, the product seller shall again be relieved of all strict liability claims, subject to subsection d. of this section; or
> (2) The manufacturer has no known agents, facility, or other presence within the United States; or
> (3) The manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate.

N.J.S.A. § 2A:58C-9(c) (emphasis added).

The NJPLA also outlines the circumstances under which a product seller *shall* be liable and provides that,

> d. A product seller shall be liable if:
> (1) The product seller has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage; or
> (2) The product seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage[.]

N.J.S.A. 2A:58C-9(d).  The New Jersey Legislature distinguished those product sellers who exercise "significant control," *see* N.J.S.A. 2A:58C-9(d)(1), from those who "knew or should have known of the defect in the product."  *See* N.J.S.A. 2A:58C-9(d)(2).  If the term product seller were interpreted narrowly as Amazon suggests, then the sections (d)(1) and (d)(2) product seller distinction would have been unnecessary and meaningless.

Here, based on the plain language of the NJPLA, Amazon is a "(d)(2)" category product seller.  First, Amazon was in the business of selling hoverboards.  It is undisputed that Amazon sold hoverboards and that its customers purchased 244,430 hoverboards from Amazon.com between November 10, 2015, and December 10, 2015.  *See* PSSOF at ¶ 52, DRSOF.  Second, Amazon was involved in putting hoverboards in the line of commerce.  The hoverboard at issue was listed on Amazon.com by Paradise 00, a Chinese corporation located in Shenzhen, Guangdong.  Mr. Giancarelli purchased two hoverboards from Amazon.com.  Although Paradise 00 listed the hoverboards, Amazon processed Mr. Giancarelli's payment and accepted its fees.  Amazon provided the only conduit between Mr. Giancarelli, the Chinese seller, and the Amazon Marketplace.  Without Amazon, Mr. Giancarelli had no connection to Paradise 00 or the defective hoverboard.

Moreover, Amazon's actions following Mr. Giancarelli's purchase further indicate that Amazon was involved in placing hoverboards in the line of commerce.  After receiving seventeen customer complaints in the United States concerning fire and explosion risks posed by hoverboards, Amazon suspended all sales of hoverboard products.   PSSOF at ¶¶ 56, 58.  Thereafter, Amazon sent an email to all hoverboard purchasers with the subject "Attention: Important Product Safety Notification Regarding Your Amazon.com Order."  *Id.* at ¶ 60.  By the end of 2015, Amazon had removed all hoverboard listings from Amazon.com.  Amazon's actions taken to warn its customers and remove potentially defective hoverboard products from Amazon.com were not only admirable, but also fit squarely within the analysis anticipated to determine the potential liability of a "(d)(2)" product seller, which bears repeating:

> (2) The product seller knew or should have known of the defect in the
> product which caused the injury, death or damage or the plaintiff can
> affirmatively demonstrate that the product seller was in possession of facts
> from which a reasonable person would conclude that the product seller had

or should have had knowledge of the alleged defect in the product which caused the injury, death or damage[.]

N.J.S.A. 2A:58C-9(d).

Amazon relies on this Court's decision in *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, Civ. No. 17-2738, 2018 WL 3546197 (D.N.J. July 24, 2018) (Wolfson, J.), to support its contention that it is not a "product seller" because it did not control the hoverboard.  Def.'s Br. at 19-22.  In *Allstate*, the Court explained that the "reach of the PLA is not boundless" and "not every party involved in the distribution process can be classified as a 'product seller.'"  *Allstate*, 2018 WL 3546197, at *7.  In declining to find that Amazon was a product seller under the NJPLA, the Court held that, "as in the broker cases, Amazon may have technically been a part of the chain of distribution, but it never exercised control over the product sufficient to make it a 'product seller' under the PLA."  *Id.* at *8.

Although it is not binding, it is worth noting that this Court revisited the issue of whether Amazon is a product seller under the NJPLA in , Civ. No. 17-9836, 2019 WL 4011502 (D.N.J. August 26, 2019) (McNulty, J.).[4]  In *Papataros*, Judge McNulty relied on a relevant decision by the U.S. Court of Appeals for the Third Circuit, in *Oberdorf v. Amazon.com*, 930 F.3d 136 (3d Cir. 2019).[5]  In *Oberdorf*, which was decided after *Allstate*, the Third Circuit held that Amazon is a "seller" for purposes of Pennsylvania's strict products liability law.  In *Papataros*, Judge McNulty

---

[4]  In *Papataros,* a minor, by his guardian Nicole Papataros filed a products liability complaint against defendants Amazon.com, Inc., Leray Group Ltd., and Coolreall Technology LLC, for injuries allegedly caused by a defective scooter that she purchased from Coolreall on Amazon.com.  *Id.* at *1.

[5] In *Oberdorf, supra,* the Third Circuit considered whether Amazon was strictly liable for injuries from an allegedly defective dog collar purchased on the Amazon.com website.  The collar broke, the leash snapped and recoiled, and the plaintiff was blinded in one eye.  930 F.3d at 142.  Oberdorf's strict product liability claim against Amazon was based on two theories: failure to warn and defective design.  *Id.* at 142–43.  The Pennsylvania district court held that Amazon was not liable because it is not a "seller" under Pennsylvania law and because Oberdorf's claims were barred by the CDA.  *Id.* at 143.  The Third Circuit reversed, over a dissent as to the Pennsylvania law issue.

found the New Jersey law indistinguishable to any significant degree from Pennsylvania and held that Amazon is a seller under the NJPLA.  Judge McNulty further found that, Amazon exercised a greater degree of control over the product in question than in *Oberdorf* or *Allstate* by physically possessing and shipping the product through Amazon's fulfillment center.  *Papataros*, at *15. [6]

Notwithstanding the above, the Legislature did not specifically add a "control" qualification within the "product seller" definition.  It did, however, list a series of actions within the definition and used the language repeatedly referred to herein, namely "*otherwise is involved in placing a product in the line of commerce*." N.J.S.A. § 2A:58C-8 (emphasis added). This definition must be reviewed in connection with statutory provisions within the NJPLA that distinguish between those product sellers who exercise "significant control," *see* N.J.S.A. 2A:58C-9(d)(1), from those who "knew or should have known of the defect in the product," *see* N.J.S.A. 2A:58C-9(d)(2).  It is the Court's obligation to presume that the Legislature was purposeful in that regard and "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions to give sense to the legislation as a whole."  *DiProspero,* at 183 N.J. 477, 492 (2005).  When reviewing Amazon's actions at bar in this context, the analysis of potential liability under the NJPLA should proceed under the "knew or should have known"

---

[6] Judge McNulty stated that "Amazon's control of the product, its relationship with the third-party sellers, and the structure of the Amazon marketplace all weigh in favor of finding that Amazon was a seller, not a mere broker or facilitator, in relation to the purchase of the scooter that is the subject of this action. Nothing about New Jersey law sufficiently undermines the analysis of *Oberdorf.*  I therefore am bound to hold that Amazon is a party subject to strict liability as a seller under the NJPLA." *Papataros*, at *17.

Judge McNulty later stayed the effect of his opinion in *Papataros by Papataros v. Amazon.com, Inc.,* 2019 WL 4740669 (D.N.J. September 3, 2019) (McNulty, J.), pending the Third Circuit's *en banc* ruling in *Oberdorf v. Amazon.com Inc.*, 818 Fed.Appx. 13 (3d Cir. 2020). The Court of Appeals would eventually certify to the Pennsylvania Supreme Court the question whether an e-commerce business would be strictly liable for a defective product that was purchased on its platform from a third-party vendor, which product was neither possessed nor owned by the e-commerce business.

standard under N.J.S.A. 2A:58C-9(d)(2) rather than the "significant control" standard under N.J.S.A. 2A:58C-9(d)(1). Accordingly, the *Allstate* holding is inapposite and does not shield Amazon from potential liability. Moreover, the *Papataros*, "control" finding is not a requirement for Amazon to be deemed a product seller under the NJPLA under the facts at bar.

Amazon also relies heavily on non-controlling case law from jurisdictions other than New Jersey to support its contention that it is not a "product seller." In deciding whether Amazon is a "product seller" within the meaning of the NJPLA, however, the Court must predict what the New Jersey Supreme Court would decide under New Jersey law. It is of little consequence whether Amazon is a "seller" for purposes of other states' statutes, as each of those statutory schemes is based on distinct language and policy considerations.

As the New Jersey Supreme Court has explained, by enacting the PLA "'[t]he Legislature intended . . . to limit the liability of manufacturers so as to 'balance[ ] the interests of the public and the individual with a view towards economic reality.'" *Sinclair*, 948 A.2d at 593 (quoting *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 675 A.2d 620, 627 (1996)). Moreover, courts should be cautious in expanding the law when doing so "would impose a substantial economic burden on these businesses and individuals, without necessarily achieving the goal of enhanced product safety." *Zaza*, 144 N.J. at 65. The Act has been interpreted as evincing a legislative policy "to limit the expansion of products-liability law." *Zaza*, 144 N.J. at 4 (citing *Roberts v. Rich Foods, Inc.*, 139 N.J. 365, 374 (1995)). Here, the determination that Amazon is a N.J.S.A. 2A:58C-9(d)(2) product seller fits squarely within the NJPLA's principles and was clearly anticipated within the statutory language. Moreover, Amazon, through its BSA terms, requires third-party sellers to maintain liability insurance naming Amazon as an insured and that third-party sellers indemnify Amazon for any claims or losses arising out of the sales of their

products through Amazon's on-line marketplace. Def.'s Br. at 1 ¶ 2, ECF No. 59-1.  This is an indication that Amazon was not only aware of the potential liability and the economic realities associated with its e-commerce/on-line sales activities but also acted in anticipation of such. Accordingly, Amazon is well positioned to distribute the cost of compensating customers for injuries caused by defects and thereby avoid the consequence of "a substantial economic burden." *See Zaza*, 144 N.J. at 65.

Having concluded that Amazon was in the business of selling hoverboards and was involved in putting them in the line of commerce, the Court finds that Amazon is a "product seller" under the NJPLA and will deny its motion for summary judgment as to that particular issue.

## B. The NJPLA subsumes Plaintiff's Negligence and Implied Breach of Warranty Claims.

This Court has consistently acknowledged that the "PLA does not recognize either negligence or implied breach of warranty as separate claims for harm caused by a defective product; those claims have been 'subsumed within the new statutory cause of action.'"  *West v. Am. Honda Motor Co.,* Civ. No. 08–0700, 2008 WL 4104683, at *3 (D.N.J. Aug. 28, 2008) (citing *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 591 A.2d 643, 647 (1991)); *see also Koruba v. Am. Honda Motor Co.*, 396 N.J. Super. 517, 935 A.2d 787, 795 (2007) (explaining that "the PLA 'no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for 'harm[,]' [including personal injury,] caused by a defective product' or an inadequate warning.") (citation omitted); *Calender v. NVR, Inc.,* No. 10–4277, 2012 WL 4482009, at *3–4 (D.N.J. Sept. 26, 2012) (granting summary judgment to defendant on negligence and implied breach of warranty claims because they were subsumed by the PLA). "Rather, the exclusive method to prosecute such a claim is under N.J.S.A. 2A:58C–2 [the PLA] by proving that the product was not reasonably fit, suitable or safe for its intended purpose because it either

contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner." *Koruba*, 935 A.2d at 795.

Here, Amazon contends that NJM's negligence claim "is based on the 'distribution and sale of the aforementioned hoverboard' and 'fail[ure] to adequately notify and/or warn' of the 'dangerous condition posed by the subject hoverboard and others like it.'" Def.'s Br. at 26 (citing Am. Compl. at ¶¶ 32-33, ECF No. 15). Thus, Amazon argues that NJM's negligence claim falls squarely within NJPLA. *Id*. The Court agrees. NJM cannot simultaneously proceed with its common law claim for negligence because the claim is subsumed by the NJPLA. *See, e.g., Kaur v. Standex Intern. Corp.,* No. 06–2425, 2009 WL 2016073, at *2 n. 4 (D.N.J. July 7, 2009) (recognizing that plaintiffs' "various common law personal injury claims ... have been subsumed under the Products Liability Act ("PLA") in New Jersey."); *Durand ex rel. Durand v. Kolcraft*, No. 05–4348, 2007 WL 4440165, at *3 n. 4 (D.N.J. Dec. 14, 2007) (explaining that to the extent plaintiff's complaint couched any of its product liability allegations as claim for negligence, "the PLA eliminate[d] the legal basis for this negligence claim" because the Act "provides the exclusive remedy for all personal injury claims arising out of the use of a product").

Moreover, Amazon contends that the NJPLA subsumes Plaintiff's implied warranty claims. Def.'s Br. at 26. NJM offers no argument in opposition to this premise, apparently conceding that its implied breach of warranty claim is subsumed by the NJPLA. Accordingly, Amazon has met its burden and is entitled to the entry of summary judgment on NJM's claims for negligence and implied breach of warranty.

## IV.    CONCLUSION

For the foregoing reasons, Amazon's motion for summary judgment [ECF No. 59] is

**GRANTED in part and DENIED in part.**   An appropriate Form of Order accompanies this

Opinion.


                                                        s/ Julien Xavier Neals
                DATED: June 29, 2022                    JULIEN XAVIER NEALS
                                                        United States District Judge